CLERKS OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED
March 17, 2025
LAURA A. AUSTIN, CLERK
BY: s/ K. SAVILLE
       DEPUTY CLERK

L1 IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>**JANIKE DUNBAR HOLT,**<br>a/k/a "Nike," "Janike Tagovailoa,"<br>"Keanu Tagovailoa," "Trey<br>Tagovailoa" | Case No.  7:25mj56 |

## AFFIDAVIT IN SUPPORT OF
## CRIMINAL COMPLAINT AND ARREST WARRANT

I, Daniel Lang, being duly sworn, do hereby depose and state:

1. I am a Criminal Investigator Deputy United States Marshal (CIDUSM) with the United States Marshals Service (USMS) and have been since October 17, 2016. I am currently assigned as the District Sex Offender Coordinator (DSOC) for the Western District of Virginia in Roanoke, Virginia. In accordance with the performance of my duties, I am assigned to locate and apprehend federal, state, and local fugitives, conduct criminal investigations, and make arrests in accordance with the same. My primary responsibility as the District Sex Offender Coordinator is to investigate crimes involving individuals that are convicted sex offenders and who have failed to register as required by the Sex Offender Registration and Notification Act ("SORNA") (codified at Title 42, United States Code, Section 16901, et seq.), enacted on July 27, 2006, as part of the Adam Walsh Child Protection Act of 2006. Prior to my employment with the US Marshals Service, I was employed for six (6) years as a Special Agent with the U.S. Department of Health and Human Services, Office of the Inspector General (HHS-OIG), and two (2) years as a Uniformed Officer with U.S. Customs and Border Protection (CBP). I am a graduate of the Basic Deputy U.S. Marshal Training Academy, the Sex Offender Investigations Coordinator Basic

Course, the Criminal Investigator Training Program, the HHS-OIG Special Agent Basic Training Program, the CBP Integrated Training Program, and numerous mission-specific training courses.

2. The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

## STATUTORY BACKGROUND

3. The applicable "failure to register" statute, Title 18, United States Code, Section 2250 provides, as relevant here:

Whoever-

(1) is required to register under the Sex Offender Registration and Notification Act;

(2) . . . (B) travels in interstate or foreign commerce . . . ; and

(3) knowingly fails to register or update a registration as required by the Sex Offender Registration and Notification Act;

shall be fined under this title or imprisoned for not more than 10 years, or both.

4. Section 113 of SORNA (34 U.S.C. 20913(a)) requires a sex offender to register (and keep the registration current) in each jurisdiction where the offender resides and, pursuant to 34 U.S.C. § 20913(c) must also keep that registration current. Specifically, "[a] sex offender shall, not later than 3 business days after each change of name, residence, employment, or student status, appear in person in at least 1 jurisdiction involved pursuant to subsection (a) and inform that jurisdiction of all changes in the information required for that offender in the sex offender registry."

5. SORNA defines a "sex offender" as "an individual who was convicted of a sex offense." 34 U.S.C. § 20911(1). A "sex offense," in turn, is defined to include "a criminal offense

that is a specified offense against a minor," which includes "[a]ny conduct that by its nature is a sex offense against a minor," including a state offense. 34 U.S.C. § 20911(5)(A)(ii), (6), (7)(I).

6. The North Carolina statute "Taking indecent liberties with children" (§ 14-202.1) provides:

> (a) A person is guilty of taking indecent liberties with children if, being 16 years of age or more and at least five years older than the child in question, he either;
>
> > (1) Willfully takes or attempts to take any immoral, improper, or indecent liberties with any child of either sex under the age of 16 years for the purpose of arousing or gratifying sexual desire; or
> >
> > (2) Willfully commits or attempts to commit any lewd or lascivious act upon or with the body or any part or member of the body of any child of either sex under the age of 16 years.

## PROBABLE CAUSE

7. On or about March 14, 2023, Janike Dunbar HOLT was arrested by personnel from the U.S. Marshals Capital Area Regional Fugitive Task Force (CARFTF) in Roanoke, Virginia, within the Western District of Virginia. HOLT was wanted by the Alamance County Sheriff's Office in North Carolina for the state offense of failing to report a change of address despite being registered as a sex offender.

8. HOLT is a sex offender from North Carolina who, at the time of his arrest, was not registered as a sex offender in the Commonwealth of Virginia, as required by law. On August 1, 2018, HOLT was convicted of 3 counts of "Indecent Liberties with a Child" in violation of North Carolina Statute 14-202.1. As a result of these convictions, HOLT was sentenced to 14-26 months in the North Carolina Department of Adult Correction and required to register as a sex offender in

the State of North Carolina for not less than 10 years and not more than 30 years, beginning on October 15, 2018.

9.  On or about October 11, 2018, HOLT completed his initial sex offender registration with the Alamance County Sheriff's Office in North Carolina. As a part of this sex offender registration process, HOLT acknowledged his "Duty to Register" requirements both by signature and by affixing his initials. HOLT signed and initialed these forms indicating his understanding of the Sex Offender Registration process, which included numerous provisions. Specific to this investigation, HOLT acknowledged the following three sections:

    a. (11) MOVING OUT-OF-STATE

        i. If I change residence or establish another address in another state, I must report the new address to the last registering county sheriff.

        ii. Such notification shall be made <u>IN-PERSON</u> and must occur at least three (3) business days prior to the date I intend to move out of North Carolina. I will identify the state and provide the new address, telephone number and any contact information.

        iii. I understand that if the new state requires registration, I must register with the designated law enforcement agency of the new state. I will comply with any registration requirements in the new state of residence to which I move, obtain employment or attend school. If I have questions, I will contact the nearest law enforcement agency to my new location.

        iv. I understand North Carolina may forward my information to the gaining state.

      v.    If I indicated my intent to reside in another state or jurisdiction and later decide to remain in North Carolina, I shall within three (3) business days after the date upon which I indicated I would leave North Carolina, report IN-PERSON to the county sheriff's office to which I reported the intended change of residence of my intent to remain here.

  b.  (12) VISITING OR ENTERING ANOTHER STATE TERRITORY OR JURISDICTION:

      i.    I understand that each state has its own registration laws.

      ii.    I understand I may have an obligation to register in other states I enter.

      iii.    I understand it is my obligation to know the law of each state I enter.

      iv.    I should contact each state before entering to ensure compliance.

  c.  (13) OUT OF COUNTY EMPLOYMENT/RESIDENCY

      i.    I understand I should notify the sheriff of my county of registration when I will be working or residing outside of that county for more than ten (10) days in a 30-day period for an aggregate (total) period of 30 days in a calendar year.

10.    According to HOLT's sex offender registration records provided by the Alamance County Sheriff's Office, HOLT checked in or updated his information with the Alamance County Sheriff's Office monthly between April of 2022 and January of 2023. HOLT's last check-in with the Alamance County Sheriff's Office, prior to his arrest and extradition in March of 2023, occurred on or about January 11, 2023, and he provided an address of "Homeless."

11.    Following his arrest in Roanoke, Virginia, on March 14, 2023, HOLT was interviewed by me at the Roanoke City Adult Detention Center. During this interview, HOLT

made numerous statements that were later refuted by evidence and interviews conducted as part of this investigation, including the following:

   a. HOLT stated that he has never had any problems keeping his North Carolina Sex Offender Registration current, nor has he had any problems reporting for his sex offender re-registration or verification.

      i. HOLT's North Carolina Sex Offender records indicate that on or about June 9, 2022, HOLT was contacted by the Alamance County Sheriff's Office and was notified that he was in violation of his sex offender registration requirements. Specifically, HOLT had moved out of his registered address in May of 2022 and had not updated his North Carolina Sex Offender Registry information regarding his change of address. A felony warrant was issued for HOLT's arrest relating to this violation, and he was arrested on the same date.

      ii. HOLT's North Carolina Sex Offender records indicate that on or about June 10, 2022, an additional arrest warrant was issued for HOLT due to HOLT providing false information relating to his address on his sex offender re-registration.

      iii. HOLT's North Carolina Sex Offender records indicate that in September of 2022, HOLT was given a verbal warning by Investigator Nash from the Alamance County Sheriff's Office relating to an additional sex offender registry violation. The Alamance County District Attorney's Office declined to prosecute this case.

b. HOLT stated that he was not residing in Roanoke, Virginia, at the time of his arrest, and instead was commuting back and forth to Burlington, North Carolina, every other day or every third day.

   i. Interviews as well as historical GPS information (further described below) obtained via a federal search warrant indicate that upon arriving in the Western District of Virginia on or about February 6, 2023, HOLT never left the Western District of Virginia prior to his arrest on March 14, 2023.

c. HOLT stated that he was playing baseball in Roanoke, Virginia, and had been recruited to play baseball for the Salem Red Sox.

   i. Records checks were conducted with the Salem Red Sox, which confirmed that HOLT was never a player or employee of this organization in any capacity. Notably, on or about February 9, 2023, HOLT emailed the general manager for the Red Sox, saying that he had just moved "here" (presumably referring to in or near Salem) from North Carolina and asking if he could have a tryout. The general manager responded the same day and told HOLT that they do not hold local tryouts.

d. HOLT stated that he had informed his North Carolina Probation Officer numerous times of his travel to Virginia.

   i. An interview was conducted with North Carolina Probation Officer Aaron Krah, who supervised HOLT. Probation Officer Krah stated that he had no knowledge of HOLT being in the Commonwealth of Virginia until he learned that HOLT had been arrested in Roanoke, Virginia, on March 14, 2023. Further, a review of HOLT's cell phone and data records, obtained

via a search warrant, show no phone calls made to Probation Officer Krah during the period in which HOLT was present in the Western District of Virginia.

    e. HOLT claimed to have a 2-year-old daughter in the State of North Carolina.

        i. Interviews were conducted with numerous witnesses who confirmed that HOLT did not have any children. The child's mother has confirmed that HOLT was not the father of her child and that she did not meet HOLT until after the child was born. Throughout the course of the investigation, numerous witnesses have stated during interviews that HOLT claimed to have had a child and that he asked them for money to assist him in supporting that child.

12. On or about March 28, 2023, the Virginia State Police conducted a due diligence check of the Virginia Sex Offender Registry and determined that prior to his arrest on March 14, 2023, HOLT had not begun or completed the process to register as a sex offender in the Commonwealth of Virginia.

13. On or about April 12, 2023, the Virginia State Police determined in writing that, based upon HOLT's conviction for "Indecent Liberties with a Child" in North Carolina, HOLT would be classified as a Tier I Sex Offender in the Commonwealth of Virginia, which would carry a 15-year sex offender registration requirement with the Virginia State Police.

14. On or about April 18, 2023, CIDUSM Lang received copies of HOLT's North Carolina Sex Offender Registration records from the Alamance County Sheriff's Office. Contained within these records were the sex offender registration requirements that HOLT

acknowledged his understanding of, as well as case notes detailing HOLT's instances of non-compliance in 2022.

15. On or about July 19, 2023, I submitted a search warrant to Cellco Partnership dba Verizon Wireless for historical GPS records relating to HOLT's cellular telephone (336-447-0697). HOLT told me when I interviewed him that this was his phone number.

16. On or about August 20, 2023, Verizon Wireless provided me with the requested records. My analysis of these records showed that HOLT arrived in the Western District of Virginia from North Carolina on or about February 6, 2023, and that, from that point, he never departed the Western District of Virginia prior to his March 14, 2023, arrest.

17. The (336) 447-0697 phone number was also listed as being associated with HOLT on a March 16, 2023, Roanoke City Police Department Report (23-024598) which was taken relating to a call for service involving a fraud investigation. Specifically, in the narrative of this report, the reporting officer, Ofc. S.B. Frossell, lists the "Suspect" as Janike Dunbar HOLT and placed the phone number (336) 447-0697 next to HOLT's name. The complainants in the report, B.L. and J.L., stated that HOLT scammed them out of $1,020. They further stated that HOLT had moved to Roanoke on February 6, 2023, and had stayed at their home in Roanoke. While staying with B.L. and J.L., HOLT attempted to provide them with a check for $75,000 that he claimed was part of a payment for being falsely accused in his case in North Carolina.

18. That $75,000 check was filled out by HOLT but comes from the checkbook of M.W. I have interviewed M.W., who is a friend of HOLT's. HOLT spent a few nights staying at M.W.'s home in North Carolina around November or December 2022. M.W. confirmed that the $75,000 check came from her checkbook and that the writing on it was HOLT's handwriting. M.W. was aware of HOLT stealing two other checks of hers. M.W. believes HOLT took all three

of these checks from her checkbook without her knowledge sometime while he was staying at her home.

19. I have also interviewed the women who filed the Roanoke City police report, B.L. and J.L. B.L. and J.L. confirmed that HOLT was living in Roanoke in early 2023. They also reported receiving text messages from individuals claiming to be affiliated with baseball teams that were purportedly recruiting HOLT to play for them. These messages related to B.L. and J.L. selling their homes and traveling with HOLT for his baseball career.

20. One of the individuals who was reaching out to B.L. and J.L. claimed to be D.B., the Manager of a Major League Baseball organization. I am aware that D.B. was the Manager of a Major League Baseball team until fall 2023. On or about March 23, 2023, I sent a letter to that Major League Baseball team asking whether they had had any correspondence with HOLT. On or about March 29, 2023, an individual from that Major League Baseball team responded to me that they had conducted a search for records related to HOLT, and that the team has not entered into any type of contractual relationship with HOLT and that they have no record of him.

21. On or about August 10, 2023, B.L. allowed me to take photographs of text messages she received, including from the individual claiming to be D.B. In summary, these messages indicated that HOLT would purportedly be signing a Major League Baseball contract with the aforementioned team on March 30, 2023. These messages also indicated that B.L.'s family would be moving to Houston, Texas, with HOLT to serve as his managers. Contained within the messages was additional text indicating that the aforementioned team would provide B.L. and her family homes, transportation to Texas, and a $5.5 million check upon HOLT signing his Major League Baseball contract.

22. On or about September 6, 2023, B.L. provided me with the phone number associated with the text messages from the individual claiming to be D.B. This phone number was (832) 290-7035. I subsequently learned through legal process that this phone number was registered with a company called Appsverse, Inc., using the email address trayybaby929@gmail.com, a known email address of Janike Dunbar HOLT.

23. I submit that probable cause exists to charge JANIKE DUNBAR HOLT with a violation of 18 U.S.C. 2250, for failing to register and update his sex offender registration status as required.

24. I declare under the penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.

DANIEL LANG, Complainant
United States Marshals Service

Subscribed and sworn to by reliable electronic means on _____March 17th_____, 2025

HONORABLE C. KAILANI MEMMER
UNITED STATES MAGISTRATE JUDGE